THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE _CIV LR 7.1(b)(1)_
(Rule Number/Section)

FILED ___ LODGED
___ RECEIVED ___ COPY

MAY 21 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

Richard M. Wirtz (SBN 137812) (Pro Hac Vice pending)
WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, California 92108
voice: 858.259.5009
fax:   858.259.6008
email: rwirtz@wirtzlaw.com

Thomas D. Foster (SBN 213414) (Pro Hac Vice pending)
TD Foster - Intellectual Property Law
12626 High Bluff Drive, Suite 150
San Diego, CA 92130
voice: 858.922.2170
email: foster@tdfoster.com

Attorneys for Plaintiff DAVID ELLIOTT

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID ELLIOTT, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation and DOES 1-10,<br><br>Defendants. | CV-12-1072-PHX-MHB<br><br>Case Number:<br><br>**COMPLAINT FOR CANCELLATION OF TRADEMARK AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff David Elliott ("Plaintiff") alleges as follows:

1. This action seeks cancellation of GOOGLE, INC.'s ("Defendant") federally registered trademarks pursuant to 15 U.S.C. sections 1064 and 1119, and a declaration of Plaintiff's rights with respect to the Fair Use Doctrine, codified at 15 U.S.C. section 1115 of the Lanham Act, among other rights.

2. Defendant is the record owner of federally registered trademarks issued by the United States Patent and Trademark Office ("USPTO"), namely, U.S. Registration No. 2,806,075 ("'075 Registration") and 2,884,502 ("'502 Registration"). Copies of the registrations are attached as **Exhibit 2**. Plaintiff contends that Defendant's registrations should be cancelled because the marks are generic.

3. The term "GOOGLE" is, or has become, a generic term universally used to describe the action of internet searching with any search engine, which cannot serve as a trademark to the exclusion of others.

4. Additionally, declaratory relief should be granted establishing that any use that Plaintiff is making of the term "GOOGLE" is in good faith, and in a non-trademark manner, to truthfully describe the search of a specific subject matter within his registered domain names.

## I.

## JURISDICTION

5. This Court has jurisdiction over this matter pursuant to 15 U.S.C. Sections 1119 and 1121, and 28 U.S.C. Section 1331 and 2201.

6. This Court has personal jurisdiction over the parties as they transact and solicit business within this District.

7. Venue in this District is proper under 28 U.S.C. section 1391 as substantial events giving rise to this action occurred in this District.

## II.

## THE PARTIES

8. Plaintiff David Elliott is an individual and an intended third-party beneficiary of the registration of the domain names containing the term "GOOGLE" listed in **Exhibit 1** of this Complaint ("Domain Names") and incorporated by this reference. Plaintiff purchased and registered the Domain Names at issue using Chris Gillespie's GoDaddy.com account, with permission. Plaintiff offers or intends to offer services internationally and domestically in all fifty states, including within this Judicial District.

9. Defendant Google, Inc. is a Delaware corporation with its principal place of business in Mountain View, California. Defendant is a company in the business of promoting and operating its internet search engine, and promoting and selling internet products. Defendant offers its services in all fifty states and conducts business within this Judicial District.

//

//

### III.
### FACTS COMMON TO ALL COUNTS
#### Plaintiff's Business Model and Related Actions

10. Plaintiff is developing an internet-based business that will promote commerce, community, relationships, personal health, charity, and more. This business is based upon ICANN's intention to remodel and restructure the Internet and its use by releasing affinity-and location-based domain extensions. The initial phase of the business will be targeted toward the GLBT community worldwide, but the model for the future of the business is unlimited.

11. As part of these plans, Plaintiff obtained and registered the Domain Names in February and March of 2012 using Chris Gillespie's GoDaddy.com account, to be used in connection with Plaintiff's bona fide offering of goods and services. Plaintiff's Domain Names, listed in Attachment A, contain the **generic verb** "GOOGLE" (meaning "to search") plus a noun, including topics, brands or persons, thereby creating a new term with a distinct meaning.

12. On March 14, 2012, Defendant filed a complaint against Mr. Gillespie, the named registrant of the Domain Names, with the National Arbitration Forum ("Forum") pursuant to the Uniform Domain Name Dispute Resolution Policy adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN"), arguing a perceived likelihood of confusion and seeking transfer of the Domain Names to Defendant. The proceeding number for this domain name dispute is FA1203001434643.

13. On April 16, 2012, in agreement with and for the benefit of Plaintiff, a Petition for Cancellation with the United States Patent and Trademark Office before the Trademark Trial and Appeal Board ("TTAB") was filed in the name of the registrant of the Domain Names to cancel Defendant's registration of the same two marks at issue in this complaint.

14. On April 17, 2012, in agreement with and for the benefit of Plaintiff, a timely response was filed to the domain name dispute in the Forum. The Forum issued a decision on May 10, 2012, granting Defendant's request. Godaddy.com, LLC intends to transfer these Domain Names on May 24, 2012, in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy.

15. Plaintiff has a detailed business model that he has expended time and effort to create based on research of technological and Internet trends which led him to select these particular Domain Names. Plaintiff will be damaged if the Domain Names are transferred.

16. Plaintiff did not register the Domain Names in the hope of attracting Internet users who are seeking to avail themselves of Defendant's specific search engine services. None of Plaintiff's Domain Names contain a misspelling of "GOOGLE," but all Domain Names spell the term faithfully and correctly. Users who arrive at Plaintiff's Domain Names do so by using the term "GOOGLE" as a generic verb to search for the topic, brand, or person.

17. Neither Plaintiff nor the registrant of record is offering the Domain Names for sale or using them passively.

18. Plaintiff has complied with all requests from third-party trademark owners to transfer the domain names that include the third parties' marks free of charge. (e.g. googleamex.com transferred to American Express Company free of charge, etc.).

19. Plaintiff did not register, did not cause to be registered, and does not use the Domain Names in bad faith. Plaintiff has conducted extensive research, including several dictionary definitions, and discovered the common trend of using the term "GOOGLE" as a generic verb meaning, generally, "to search."

### Defendant's Registered Marks

20. Defendant obtained registration of the mark "GOOGLE" in International Class 009 for "computer hardware; computer software for creating indexes of information, indexes of web sites and indexes of other information resources." The '502 Registration was issued on September 14, 2004, alleging first use and first use in commerce on January 26, 2000, for the Class 009 goods. The filing date of the Defendant's application for the '502 Registration was September 16, 1998.

21. Defendant has also obtained registration of the mark "GOOGLE" in International Class 038 for "providing electronic mail and workgroup communications services over computer networks; providing multiple user access to proprietary collections of information by means of global computer information networks" and International Class 042 for "computer

services, namely, providing software interfaces available over a network in order to create a personalized on-line information service; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information, indexes of web sites and indexes of other information sources in connection with global computer networks; providing information from searchable indexes and databases of information, including text, electronic documents, databases, graphics and audio visual information, by means of global computer information networks." The '075 Registration was issued on January 20, 2004, alleging first use and first use in commerce in September of 1997 for the Class 038 and 042 services. The filing date of Defendant's '075 Registration was September 16, 1999.

22.   Based on the information available from the USPTO, Defendant has yet to file a Declaration of Incontestability for any of these marks.

### History of the Term "GOOGLE"

23.   The origin of term "GOOGLE" is the word "googol," the mathematical term for a 1 followed by 100 zeros. Defendant itself recognizes the historic origins of the term "GOOGLE" on its website.

24.   Since Defendant first adopted the term "GOOGLE," the mark "GOOGLE" has become a world-wide generic term for internet searching.

25.   Worldwide, the term "GOOGLE" has been, and is now used as a common transitive verb meaning "to search the Internet" or to "search the Internet using any search engine." The Collins English Dictionary, the online dictionary www.dictionary.com, and Wikipedia all recognize "GOOGLE" as a transitive verb. There is no known synonym for the verb "GOOGLE." Copies of the definitions of the verb "GOOGLE" from these dictionaries are respectively attached as **Exhibits 3, 4, and 5** and incorporated by this reference. One researcher, Adam Kilgarriff, has identified at least 5 English, 17 Dutch, 34 German, 6 Norwegian, 5 Swedish, 8 Italian, 5 Spanish, 21 Romanian, 4 Slav, 11 Russian, 25 Slovak, 7 Slovene, 10 Irish, 10 Welsh, 16 Greek, 10 Chinese, 3 Hindi, 2 Telugu, and 19 Persian forms of the verb "GOOGLE." A copy of Mr. Kilgarriff's report is attached as **Exhibit 6** and incorporated by this reference.

26. On January 8, 2010, the American Dialect Society voted the verb "GOOGLE" the word of the decade, identifying its meaning as "to search the Internet." A copy of the press release is attached as **Exhibit 7** and incorporated by this reference.

27. On July 8, 1998, co-founder Larry Page himself, used "GOOGLE" as a verb when he wrote on a mailing list: "Have fun and keep googling!"

28. Defendant is attempting to exercise exclusive rights and control over the now generic verb "GOOGLE" through its registered mark, under which it seeks to become the de facto regulator for all uses of the term "GOOGLE," and benefit monetarily as a result.

29. While Defendant's registered marks might also be used as a name of or to identify a unique product or service, the primary significance of the registered marks to the relevant public is that of the generic name and interchangeable with the act of an online search.

30. Defendant has been aware for some time that the term "GOOGLE" is being used generically as a transitive verb meaning "to search the Internet." Defendant's December 31, 2010 Annual Report, page 14, recognized that "the word 'Google' could become so commonly used that it becomes synonymous with the word 'search.' If this happens, we could lose protection for this trademark." A copy of this report is attached hereto as **Exhibit 8** and incorporated by this reference.

31. Thousands of other domain names using the term "GOOGLE" exist. These are not owned by either Plaintiff or Defendant, but many are running live web sites, including sites providing pornographic material, questionable dating services, competitive search engine services, and more. Plaintiff is not aware of any efforts by Defendant to stop these other domain name owners from using the "GOOGLE" term in their domain names. Screenshots of these domains are attached as **Exhibit 9** and incorporated by this reference.

32. In addition, when Plaintiff last checked, there were at least 959 "GOOGLE"-related domains for sale in the aftermarket through Go Daddy Auctions, being sold for tens of thousands of dollars. These "GOOGLE"-related domains have been purchased, registered, and listed for re-sale at huge profits by owners who are neither Plaintiff nor Defendant. Defendant has taken no action to stop the sales or control ownership. A list of non-

Plaintiff "GOOGLE"-related domain names is attached as **Exhibit 10** and incorporated by this reference.

33. In comparison to other brand-related domain names, the number of "GOOGLE"-related domain names are widespread and dominate the marketplace. For example, a comparison of domains for sale on Go Daddy Auctions, (attached and incorporated by this reference as **Exhibit 11**) shows that there are 160 "GOOGLE"-domains for every one JPMorganChase-domain; 192 "GOOGLE" domains for every one Macy's domain; 240 "GOOGLE" domains for every Metlife domain; and 120 "GOOGLE" domains for every one Aflac-domain.

34. It was Plaintiff's understanding, based on research that includes Defendant's own promotions, that the verb "GOOGLE" is commonly and generically being used to describe Internet searching. That, in conjunction with the available domains on Go Daddy Auctions, http://auctions.godaddy.com, indicated to the Plaintiff that he may legitimately purchase the available Domain Names in good faith.

### Relation Between Defendant's Name and Plaintiff's Domain Names

35. There is no actual or likelihood of confusion between the Defendant's search engine and the Domain Names at issue. Internet users will not be confused when arriving at the domain names because Plaintiff has made and will be making the appearance of the websites distinct from Defendant's www.google.com website. Users would only come upon Plaintiff's websites when they use the term "GOOGLE" as a generic verb in conjunction with a topic, brand, or person to broadly search the Internet.

36. Internet users who seek to avail themselves of Defendant's specific search engine services to obtain information about a certain topic, brand or person almost exclusively go to the www.google.com domain name directly and type in the topic, brand, or person into the Defendant's search engine search box.

37. Internet users seeking Defendant's search engine do not arrive at Plaintiff's website instead, but rather use the search engine services directly on the www.google.com domain name. Users who seek Google's search engine would not arrive at Plaintiff's websites by

mistake.

38. Internet users instead type the generic term "GOOGLE," ubiquitously used as a verb, to mean "search," combined with another generic topic, directly into their internet browsers to arrive at Plaintiff's Domain Names. Under no circumstances do users arrive at Plaintiff's websites by going directly to the www.google.com domain and typing in a topic into the search box.

### General Allegations

39. The Domain Names sought to be transferred are or will be inconsistent with the Plaintiff's equal right to use the designation in connection with the same or a similar business enterprise. Plaintiff has at least equal rights to use this term in connection with his goods and services.

40. If Defendant is permitted to retain the registrations sought to be canceled, Plaintiff will lose his rights to the Domain Names now in dispute and will have his rights jeopardized to acquire domain names in the furtherance of his business plans comprising the generic term GOOGLE.

41. If Defendant is permitted to acquire the domain registrations sought to be transferred, Plaintiff will lose title in and to the Domain Names and will lose his right to enjoy the free and exclusive use thereof in connection with the offering of his goods and services through his Internet-based business, all to the damage of Plaintiff.

42. Defendant has not objected to Go Daddy Auction reselling of domain names with the generic term "GOOGLE," nor has it objected to other purchasers/registrars of domain names using the generic term "GOOGLE," but rather has singled out Plaintiff and his business model for attack.

43. Plaintiff, and similarly situated sellers, have the right to fairly use the generic term "GOOGLE" to describe searching on the internet when, in fact, the term is accurately used as such.

44. The fact that Defendant has obtained federally registered marks containing the generic term "GOOGLE" does not entitle Defendant to monopolize a term that is now common

among consumers to describe the act or process of internet searching.

45. Defendant's attempt to restrict the fair use of the generic term "GOOGLE" by Plaintiff and others within the marketplace has given rise to the present controversy, necessitating the cancellation of the Defendant's registered marks, and a declaration of Plaintiff's rights with respect to the fair use of the generic term "GOOGLE."

46. All conditions precedent to this lawsuit have occurred, been performed, or have been waived by Defendant.

47. As a result of the conduct set forth above, Plaintiff has been forced to retain the undersigned attorneys to prosecute the instant action and is obligated to pay reasonable attorney's fees. Those fees should be paid by Defendant, pursuant to controlling law.

48. Pursuant to the Lanham Act, the Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register with respect to the subject mark, and its inability to serve as a proper indicator of origin, due to its generic, common, and ordinary meaning.

## FIRST CAUSE OF ACTION

### Cancellation of U.S. Registration No. 2,806,075

### (15 U.S.C. §§ 1064 and 1119)

49. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth at this point.

50. Defendant claims ownership of the '075 Registration for the mark "GOOGLE." The '075 Registration should be cancelled pursuant to 15 U.S.C. sections 1064 and 1119, because the term "GOOGLE" is generic, and of common ordinary usage, in connection with goods, services, products, and derivatives thereof.

51. The term "GOOGLE" is commonly understood as a generic term for searching on the internet with any search engine, and is otherwise descriptive of the act of searching on the internet.

52. Pursuant to the Lanham Act, the Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register with respect to the subject mark, and its

inability to serve as a proper indicator of origin, due to its genericness, common and ordinary meaning.

## SECOND CAUSE OF ACTION

### Cancellation of U.S. Registration No. 2,884,502

### (15 U.S.C. §§ 1064 and 1119)

53. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth at this point.

54. Defendant claims ownership of the '502 Registration for the term "GOOGLE" mark. The '502 Registration should be cancelled pursuant to 15 U.S.C. sections 1064 and 1119, because the term "GOOGLE" is generic, and of common ordinary usage, in connection with goods, services, products, and derivatives thereof.

55. The term "GOOGLE" is commonly understood as a as a generic term for searching on the internet with any search engine, and otherwise descriptive of the act of searching on the internet.

56. Pursuant to the Lanham Act, the Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register with respect to the subject mark, and its inability to serve as a proper indicator of origin, due to its genericness, common and ordinary meeting.

## THIRD CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C. § 2201)

57. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth at this point.

58. An actual and present controversy exists between Plaintiff and Defendant with respect to Plaintiff's ability to use the generic term "GOOGLE" in his Domain Names and to describe the products and services sold by Plaintiff.

59. Plaintiff believes that the term "GOOGLE" is generic and is of ordinary meaning and usage, and that under any circumstances, Plaintiff has a right to use the term "GOOGLE"

to fairly and properly describe the act of searching on the internet for certain terms.

60. Defendant filed an action with ICANN, requesting transfer of Plaintiff's Domain Names and received a decision granting this request. The Domain Names are scheduled to transfer to Defendant on May 24, 2012. Defendant raised its objection claiming trademark rights and entitlements pursuant to its registered marks. Accordingly, Plaintiff reasonably believes that Defendant will commence litigation against Plaintiff if Plaintiff does not cease use of the term "GOOGLE."

61. Even if the Court were to determine that Defendant somehow is entitled to protection in connection with the generic term "GOOGLE," Plaintiff's use of that term nonetheless constitutes "fair use" pursuant to 15 U.S.C. section 1115. Plaintiff uses the term "GOOGLE" in its Domain Names in good faith, in a non-trademark manner that does not operate as a source or indicator of origin for Plaintiff's products; rather, use of the term fairly describes internet searching of a certain term.

62. In the event that this Court determines that Defendant does have protectable rights in the generic term "GOOGLE" under the Registrations, those rights must be declared to cease at the point others in the market, such as Plaintiff, can fairly and in good faith describe their wares/services as internet searches for a certain topic or item. No current synonym exists to replace "GOOGLE" as a verb meaning to search on the internet. Moreover, the prior knowledge and dealings of Defendant supports the declaration that Defendant has waived any right to object to Plaintiff's fair or descriptive use of the term "GOOGLE," that Defendant is estopped from asserting any such objection, and is similarly barred from doing so under the doctrines of laches and acquiescence.

63. Plaintiff and Defendant's interests are adverse, and a judicial determination is necessary and appropriate to resolve the parties respective interests.

64. Plaintiff requests that this Court resolve the competing contentions of the parties and declare that:

   a.   the term "GOOGLE" is a generic term widely used throughout the world over to describe the action of searching on the internet;

    b.    Defendant does not have exclusive rights to the term "GOOGLE" in reference to searching on the internet, and cannot control the use of that term or force others to refrain from using it in this context;

    c.    Defendant's federal trademarks issued under the '075 Registration and the '502 Registration should be cancelled, and cannot be used by Defendant to prohibit the use of the term "GOOGLE" in Plaintiff's products or services;

    d.    Plaintiff's use of the term "GOOGLE" has at all times been proper and does not violate any rights that Google may have;

    e.    Defendant has waived, is estopped, and is otherwise barred from claiming Plaintiff infringed the rights, if any, that Google owns in the term "GOOGLE"; and

    f.    Plaintiff shall retain full and complete ownership of the Domain Names and no party shall transfer ownership without the consent of Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. Enter Final Judgment cancelling Defendant's marks, the '075 Registration and the '502 Registration, and directing the Director of the United States Patent and Trademark Office to remove such registrations from the Principal Register.

2. Declare that:

    a.    the term "GOOGLE" is a generic term widely used throughout the world over to describe the action of searching on the internet;

    b.    Defendant does not have exclusive rights to the term "GOOGLE" in reference to searching on the internet, and cannot control the use of that term or force others to refrain from using it in this context;

    c.    Defendant's federal trademarks issued under the '075 Registration and the '502 Registration should be cancelled, and cannot be used by Defendant to prohibit the use of the term "GOOGLE" in Plaintiff's products or services;

    d.    Plaintiff's use of the term "GOOGLE" has at all times been proper and does not violate any rights that Defendant may have;

e.  Defendant has waived, is estopped, and otherwise barred from claiming Plaintiff infringed the rights, if any, that Defendant owns in the term "GOOGLE"; and

f.  Plaintiff shall retain full and complete ownership of the Domain Names and that no party shall transfer ownership without the consent of Plaintiff.

3.  Award Plaintiff's attorney's fees and costs incurred in this action; and

4.  Grant such additional relief as the court deems just and proper.

Respectfully Submitted,

DATED: May 21, 2012

**WIRTZ LAW** APC

By: _____
Richard M. Wirtz
Attorney for Plaintiff DAVID ELLIOTT

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008