Richard M. Wirtz (SBN 137812)
W I R T Z   L A W  APC
3111 Camino del Rio North, Suite 310
San Diego, California 92108
voice: 858.259.5009
fax:    858.259.6008
email: rwirtz@wirtzlaw.com

Thomas D. Foster (SBN 213414)
TD Foster - Intellectual Property Law
12626 High Bluff Drive, Suite 150
San Diego, CA 92130
voice: 858.922.2170
email: foster@tdfoster.com

Attorneys for Plaintiffs DAVID ELLIOTT and CHRIS GILLESPIE

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID ELLIOTT, an Individual, CHRIS GILLESPIE, an Individual, <br><br>Plaintiffs, <br><br>v. <br><br>GOOGLE, INC., a Delaware corporation and DOES 1-10, <br><br>Defendants. | Case Number: CV 12-1072-PHX-SRB <br><br>**FIRST AMENDED COMPLAINT FOR CANCELLATION OF TRADEMARK AND DECLARATORY RELIEF** <br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs David Elliott ("Mr. Elliott") and Chris Gillespie ("Mr. Gillespie") (collectively "Plaintiffs") allege as follows:

1. This action seeks cancellation of GOOGLE, INC.'s ("Defendant") federally registered trademarks pursuant to 15 U.S.C. sections 1064 and 1119, and a declaration of Plaintiffs' rights with respect to the Fair Use Doctrine, codified at 15 U.S.C. section 1115 of the Lanham Act, among other rights.

2. Defendant is the record owner of federally registered trademarks issued by the United States Patent and Trademark Office ("USPTO"), namely, U.S. Registration No. 2,806,075 ("'075 Registration") and 2,884,502 ("'502 Registration"). Copies of the registrations are attached

as **Exhibit 2**.

3. Plaintiffs, as spouses and equity owners of a start-up, wish to use the term "GOOGLE" in their internet-based business. Plaintiffs contend that Defendant's registrations should be cancelled because the marks are generic.

4. The term "GOOGLE" is, or has become, a generic term universally used to describe the action of internet searching with any search engine, which cannot serve as a trademark to the exclusion of others.

5. Additionally, declaratory relief should be granted establishing that any use that Plaintiffs are making of the term "GOOGLE" is in good faith, and in a non-trademark manner, to truthfully describe the search of a specific subject matter within their registered domain names.

## I.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 15 U.S.C. Sections 1119 and 1121, and 28 U.S.C. Section 1331 and 2201.

7. Plaintiffs allege on information and belief that Defendant does and at all relevant times did maintain sufficiently continuous and systematic contacts with Arizona to warrant the exercise of general personal jurisdiction.

8. Plaintiffs allege on information and belief that Defendant does and did at all relevant times purposefully avail itself of the benefits and privileges of Arizona by virtue of its extensive business operation in Arizona.

9. Venue in this District is proper under 28 U.S.C. section 1391 as substantial events giving rise to this action occurred in this District.

## II.

## THE PARTIES AND DOMAIN NAME ACQUISITION

10. Mr. Gillespie is an individual and the named owner of the domain names containing the term "GOOGLE" listed in **Exhibit 1** of this Complaint ("Domain Names") and incorporated by this reference. At the behest of Mr. Elliott, and because Mr. Gillespie already

had a Go Daddy account, the Domain Names were purchased and registered using Mr. Gillespie's GoDaddy.com account.

11.  In addition to being an intended third-party beneficiary of the Domain Names, as Mr. Gillespie's spouse, Mr. Elliott is a joint owner of the Domain Names and the Domain Names are joint assets of the marital estate.

12.  Pursuant to the Go Daddy Universal Terms of Service Agreement, Domain Names may be purchased "on behalf of a third party." Plaintiffs at all times intended to transfer the Domain Names to a third party start-up entity, with themselves as owners. Plaintiffs were unable to transfer the Domain Names due to Defendant filing a complaint against Mr. Gillespie with the National Arbitration Forum ("Forum") pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP"). The UDRP prohibits transfer during a pending administrative proceeding.

13.  Plaintiffs together own equity in a start-up that offers or intends to offer services internationally and domestically in all fifty states, including within this Judicial District.

14.  Defendant Google, Inc. is a Delaware corporation with its principal place of business in Mountain View, California. Defendant is a company in the business of promoting and operating its internet search engine, and promoting and selling internet products. Defendant offers its services in all fifty states and conducts business within this Judicial District.

### III.
### FACTS COMMON TO ALL COUNTS
#### Plaintiffs' Business Model and Related Actions

15.  Plaintiffs own equity in an internet-based business, managed by Mr. Elliott, which will promote commerce, community, relationships, personal health, charity, and more. This business is based upon ICANN's intention to remodel and restructure the Internet and its use by releasing affinity- and location-based domain extensions. The initial phase of the business will be targeted toward the GLBT community worldwide, but the model for the future of the business is unlimited.

16.  As part of these plans, the Domain Names were obtained and registered at the

behest of Mr. Elliott in February and March of 2012 using Mr. Gillespie's GoDaddy.com account, to be used in connection with Plaintiffs' bona fide offering of goods and services. The Domain Names, listed in Attachment A, contain the ***generic verb*** "GOOGLE" (meaning "to search") plus a noun, including topics, brands or persons, thereby creating a new term with a distinct meaning.

17. On March 14, 2012, Defendant filed a complaint against Mr. Gillespie, the named registrant of the Domain Names, with the National Arbitration Forum ("Forum") pursuant to the Uniform Domain Name Dispute Resolution Policy adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN"), arguing a perceived likelihood of confusion and seeking transfer of the Domain Names to Defendant. The proceeding number for this domain name dispute is FA1203001434643.

18. On April 16, 2012, Mr. Gillespie filed a Petition for Cancellation with the United States Patent and Trademark Office before the Trademark Trial and Appeal Board ("TTAB") to cancel Defendant's registration of the same two marks at issue in this complaint.

19. On April 17, 2012, a timely response was filed to the domain name dispute in the Forum. The Forum issued a decision on May 10, 2012, granting Defendant's request. Godaddy.com, LLC intends to transfer these Domain Names on May 24, 2012, in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy.

20. Plaintiffs have a detailed business model that they have expended time and effort to create based on research of technological and Internet trends which led them to select these particular Domain Names. Plaintiffs will be damaged if the Domain Names are transferred.

21. Plaintiffs did not register the Domain Names in the hope of attracting Internet users who are seeking to avail themselves of Defendant's specific search engine services. None of Plaintiffs' Domain Names contain a misspelling of "GOOGLE," but all Domain Names spell the term faithfully and correctly. Users who arrive at Plaintiffs' Domain Names do so by using the term "GOOGLE" as a generic verb to search for the topic, brand, or person.

22. Neither Mr. Gillespie nor Mr. Elliott is offering the Domain Names for sale or using them passively.

23. Plaintiffs have complied with all requests from third-party trademark owners to transfer the domain names that include the third parties' marks free of charge. (e.g. googleamex.com transferred to American Express Company free of charge, etc.).

24. Plaintiffs did not register, did not cause to be registered, and do not use the Domain Names in bad faith. Plaintiffs have conducted extensive research, including several dictionary definitions, and discovered the common trend of using the term "GOOGLE" as a generic verb meaning, generally, "to search."

### Defendant's Registered Marks

25. Defendant obtained registration of the mark "GOOGLE" in International Class 009 for "computer hardware; computer software for creating indexes of information, indexes of web sites and indexes of other information resources." The '502 Registration was issued on September 14, 2004, alleging first use and first use in commerce on January 26, 2000, for the Class 009 goods. The filing date of the Defendant's application for the '502 Registration was September 16, 1998.

26. Defendant has also obtained registration of the mark "GOOGLE" in International Class 038 for "providing electronic mail and workgroup communications services over computer networks; providing multiple user access to proprietary collections of information by means of global computer information networks" and International Class 042 for "computer services, namely, providing software interfaces available over a network in order to create a personalized on-line information service; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information, indexes of web sites and indexes of other information sources in connection with global computer networks; providing information from searchable indexes and databases of information, including text, electronic documents, databases, graphics and audio visual information, by means of global computer information networks." The '075 Registration was issued on January 20, 2004, alleging first use and first use in commerce in September of 1997 for the Class 038 and 042 services. The filing date of Defendant's '075 Registration was September 16, 1999.

27. Based on the information available from the USPTO, Defendant has yet to file a

1  Declaration of Incontestability for any of these marks.

## History of the Term "GOOGLE"

28. The origin of term "GOOGLE" is the word "googol," the mathematical term for a 1 followed by 100 zeros. Defendant itself recognizes the historic origins of the term "GOOGLE" on its website.

29. Since Defendant first adopted the term "GOOGLE," the mark "GOOGLE" has become a world-wide generic term for internet searching.

30. Worldwide, the term "GOOGLE" has been, and is now used as a common transitive verb meaning "to search the Internet" or to "search the Internet using any search engine." The Collins English Dictionary, the online dictionary www.dictionary.com, and Wikipedia all recognize "GOOGLE" as a transitive verb. There is no known synonym for the verb "GOOGLE." Copies of the definitions of the verb "GOOGLE" from these dictionaries are respectively attached as **Exhibits 3, 4, and 5** and incorporated by this reference. One researcher, Adam Kilgarriff, has identified at least 5 English, 17 Dutch, 34 German, 6 Norwegian, 5 Swedish, 8 Italian, 5 Spanish, 21 Romanian, 4 Slav, 11 Russian, 25 Slovak, 7 Slovene, 10 Irish, 10 Welsh, 16 Greek, 10 Chinese, 3 Hindi, 2 Telugu, and 19 Persian forms of the verb "GOOGLE." A copy of Mr. Kilgarriff's report is attached as **Exhibit 6** and incorporated by this reference.

31. On January 8, 2010, the American Dialect Society voted the verb "GOOGLE" the word of the decade, identifying its meaning as "to search the Internet." A copy of the press release is attached as **Exhibit 7** and incorporated by this reference.

32. On July 8, 1998, co-founder Larry Page himself, used "GOOGLE" as a verb when he wrote on a mailing list: "Have fun and keep googling!"

33. Defendant is attempting to exercise exclusive rights and control over the now generic verb "GOOGLE" through its registered mark, under which it seeks to become the de facto regulator for all uses of the term "GOOGLE," and benefit monetarily as a result.

34. While Defendant's registered marks might also be used as a name of or to identify a unique product or service, the primary significance of the registered marks to the relevant

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

public is that of the generic name and interchangeable with the act of an online search.

35. Defendant has been aware for some time that the term "GOOGLE" is being used generically as a transitive verb meaning "to search the Internet." Defendant's December 31, 2010 Annual Report, page 14, recognized that "the word 'Google' could become so commonly used that it becomes synonymous with the word 'search.' If this happens, we could lose protection for this trademark." A copy of this report is attached hereto as **Exhibit 8** and incorporated by this reference.

36. Thousands of other domain names using the term "GOOGLE" exist. These are not owned by Mr. Gillespie, Mr. Elliott, or Defendant, but many are running live web sites, including sites providing pornographic material, questionable dating services, competitive search engine services, and more. Plaintiffs are not aware of any efforts by Defendant to stop these other domain name owners from using the "GOOGLE" term in their domain names. Screenshots of these domains are attached as **Exhibit 9** and incorporated by this reference.

37. In addition, when Plaintiffs last checked, there were at least 959 "GOOGLE"-related domains for sale in the aftermarket through Go Daddy Auctions, being sold for tens of thousands of dollars. These "GOOGLE"-related domains have been purchased, registered, and listed for re-sale at huge profits by owners who are neither Plaintiffs nor Defendant. Defendant has taken no action to stop the sales or control ownership. A list of non-Plaintiff "GOOGLE"-related domain names is attached as **Exhibit 10** and incorporated by this reference.

38. In comparison to other brand-related domain names, the number of "GOOGLE"-related domain names are widespread and dominate the marketplace. For example, a comparison of domains for sale on Go Daddy Auctions, (attached and incorporated by this reference as **Exhibit 11**) shows that there are 160 "GOOGLE"-domains for every one JPMorganChase-domain; 192 "GOOGLE" domains for every one Macy's domain; 240 "GOOGLE" domains for every Metlife domain; and 120 "GOOGLE" domains for every one Aflac-domain.

39. It was Plaintiffs' understanding, based on research that includes Defendant's own

promotions, that the verb "GOOGLE" is commonly and generically being used to describe Internet searching. That, in conjunction with the available domains on Go Daddy Auctions, http://auctions.godaddy.com, indicated to the Plaintiffs that they may legitimately purchase the available Domain Names in good faith.

**Relation Between Defendant's Name and Plaintiffs' Domain Names**

40. There is no actual or likelihood of confusion between the Defendant's search engine and the Domain Names at issue. Internet users will not be confused when arriving at the Domain Names because Plaintiffs have made and will be making the appearance of the websites distinct from Defendant's www.google.com website. Users would only come upon Plaintiffs' websites when they use the term "GOOGLE" as a generic verb in conjunction with a topic, brand, or person to broadly search the Internet.

41. Internet users who seek to avail themselves of Defendant's specific search engine services to obtain information about a certain topic, brand, or person almost exclusively go to the www.google.com domain name directly and type in the topic, brand, or person into the Defendant's search engine search box.

42. Internet users seeking Defendant's search engine do not arrive at Plaintiffs' website instead, but rather use the search engine services directly on the www.google.com domain name. Users who seek Google's search engine would not arrive at Plaintiffs' websites by mistake.

43. Internet users instead type the generic term "GOOGLE," ubiquitously used as a verb, to mean "search," combined with another generic topic, directly into their internet browsers to arrive at Plaintiffs' Domain Names. Under no circumstances do users arrive at Plaintiffs' websites by going directly to the www.google.com domain and typing in a topic into the search box.

**General Allegations**

44. The Domain Names sought to be transferred are or will be inconsistent with the Plaintiffs' equal right to use the designation in connection with the same or a similar business enterprise. Plaintiffs have at least equal rights to use this term in connection with their goods and

services.

45. If Defendant is permitted to retain the registrations sought to be canceled, Plaintiffs will lose their rights to the Domain Names now in dispute and will have their rights jeopardized to acquire domain names in the furtherance of their business plans comprising the generic term GOOGLE.

46. If Defendant is permitted to acquire the domain registrations sought to be transferred, Plaintiffs will lose title in and to the Domain Names and will lose their right to enjoy the free and exclusive use thereof in connection with the offering of their goods and services through their Internet-based business, all to the damage of Plaintiffs.

47. Defendant has not objected to Go Daddy Auction reselling of domain names with the generic term "GOOGLE," nor has it objected to other purchasers/registrars of domain names using the generic term "GOOGLE," but rather has singled out Plaintiffs and their business model for attack.

48. Plaintiffs, and similarly situated sellers, have the right to fairly use the generic term "GOOGLE" to describe searching on the internet when, in fact, the term is accurately used as such.

49. The fact that Defendant has obtained federally registered marks containing the generic term "GOOGLE" does not entitle Defendant to monopolize a term that is now common among consumers to describe the act or process of internet searching.

50. Defendant's attempt to restrict the fair use of the generic term "GOOGLE" by Plaintiffs and others within the marketplace has given rise to the present controversy, necessitating the cancellation of the Defendant's registered marks, and a declaration of Plaintiffs' rights with respect to the fair use of the generic term "GOOGLE."

51. All conditions precedent to this lawsuit have occurred, been performed, or have been waived by Defendant.

52. As a result of the conduct set forth above, Plaintiffs have been forced to retain the undersigned attorneys to prosecute the instant action and is obligated to pay reasonable attorney's fees. Those fees should be paid by Defendant, pursuant to controlling law.

53. Pursuant to the Lanham Act, the Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register with respect to the subject mark, and its inability to serve as a proper indicator of origin, due to its generic, common, and ordinary meaning.

## FIRST CAUSE OF ACTION

### Cancellation of U.S. Registration No. 2,806,075

### (15 U.S.C. §§ 1064 and 1119)

54. Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth at this point.

55. Defendant claims ownership of the '075 Registration for the mark "GOOGLE." The '075 Registration should be cancelled pursuant to 15 U.S.C. sections 1064 and 1119, because the term "GOOGLE" is generic, and of common ordinary usage, in connection with goods, services, products, and derivatives thereof.

56. The term "GOOGLE" is commonly understood as a generic term for searching on the internet with any search engine, and is otherwise descriptive of the act of searching on the internet.

57. Pursuant to the Lanham Act, the Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register with respect to the subject mark, and its inability to serve as a proper indicator of origin, due to its genericness and its common and ordinary meaning.

## SECOND CAUSE OF ACTION

### Cancellation of U.S. Registration No. 2,884,502

### (15 U.S.C. §§ 1064 and 1119)

58. Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth at this point.

59. Defendant claims ownership of the '502 Registration for the term "GOOGLE" mark. The '502 Registration should be cancelled pursuant to 15 U.S.C. sections 1064 and 1119, because the term "GOOGLE" is generic, and of common ordinary usage, in connection with

goods, services, products, and derivatives thereof.

60. The term "GOOGLE" is commonly understood as a as a generic term for searching on the internet with any search engine, and otherwise descriptive of the act of searching on the internet.

61. Pursuant to the Lanham Act, the Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register with respect to the subject mark, and its inability to serve as a proper indicator of origin, due to its genericness, common and ordinary meeting.

## THIRD CAUSE OF ACTION
## Declaratory Relief
## (28 U.S.C. § 2201)

62. Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth at this point.

63. An actual and present controversy exists between Plaintiffs and Defendant with respect to Plaintiffs' ability to use the generic term "GOOGLE" in their Domain Names and to describe the products and services sold by Plaintiffs.

64. Plaintiffs believe that the term "GOOGLE" is generic and is of ordinary meaning and usage, and that under any circumstances, Plaintiffs have a right to use the term "GOOGLE" to fairly and properly describe the act of searching on the internet for certain terms.

65. Defendant filed an action with ICANN, requesting transfer of Plaintiffs' Domain Names and received a decision granting this request. The Domain Names were scheduled to transfer to Defendant on May 24, 2012. Defendant raised its objection claiming trademark rights and entitlements pursuant to its registered marks. Accordingly, Plaintiffs reasonably believe that Defendant will commence litigation against Plaintiffs if Plaintiffs do not cease use of the term "GOOGLE."

66. Even if the Court were to determine that Defendant somehow is entitled to protection in connection with the generic term "GOOGLE," Plaintiffs' use of that term nonetheless constitutes "fair use" pursuant to 15 U.S.C. section 1115. Plaintiffs use the term

"GOOGLE" in their Domain Names in good faith, in a non-trademark manner that does not operate as a source or indicator of origin for Plaintiffs' products; rather, use of the term fairly describes internet searching of a certain term.

67. In the event that this Court determines that Defendant does have protectable rights in the generic term "GOOGLE" under the Registrations, those rights must be declared to cease at the point others in the market, such as Plaintiffs, can fairly and in good faith describe their wares/services as internet searches for a certain topic or item. No current synonym exists to replace "GOOGLE" as a verb meaning to search on the internet. Moreover, the prior knowledge and dealings of Defendant supports the declaration that Defendant has waived any right to object to Plaintiffs' fair or descriptive use of the term "GOOGLE," that Defendant is estopped from asserting any such objection, and is similarly barred from doing so under the doctrines of laches and acquiescence.

68. Plaintiffs' and Defendant's interests are adverse, and a judicial determination is necessary and appropriate to resolve the parties respective interests.

69. Plaintiffs request that this Court resolve the competing contentions of the parties and declare that:

    a. the term "GOOGLE" is a generic term widely used throughout the world over to describe the action of searching on the internet;

    b. Defendant does not have exclusive rights to the term "GOOGLE" in reference to searching on the internet, and cannot control the use of that term or force others to refrain from using it in this context;

    c. Defendant's federal trademarks issued under the '075 Registration and the '502 Registration should be cancelled, and cannot be used by Defendant to prohibit the use of the term "GOOGLE" in Plaintiff's products or services;

    d. Plaintiffs' use of the term "GOOGLE" has at all times been proper and does not violate any rights that Google may have;

    e. Defendant has waived, is estopped, and is otherwise barred from claiming Plaintiffs infringed the rights, if any, that Google owns in the term "GOOGLE";

and

f.  Plaintiffs shall retain full and complete ownership of the Domain Names and no party shall transfer ownership without the consent of Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1. Enter Final Judgment cancelling Defendant's marks, the '075 Registration and the '502 Registration, and directing the Director of the United States Patent and Trademark Office to remove such registrations from the Principal Register.

2. Declare that:

a.  the term "GOOGLE" is a generic term widely used throughout the world over to describe the action of searching on the internet;

b.  Defendant does not have exclusive rights to the term "GOOGLE" in reference to searching on the internet, and cannot control the use of that term or force others to refrain from using it in this context;

c.  Defendant's federal trademarks issued under the '075 Registration and the '502 Registration should be cancelled, and cannot be used by Defendant to prohibit the use of the term "GOOGLE" in Plaintiffs' products or services;

d.  Plaintiffs' use of the term "GOOGLE" has at all times been proper and does not violate any rights that Defendant may have;

e.  Defendant has waived, is estopped, and otherwise barred from claiming Plaintiffs infringed the rights, if any, that Defendant owns in the term "GOOGLE"; and

f.  Plaintiffs shall retain full and complete ownership of the Domain Names and that no party shall transfer ownership without the consent of Plaintiffs.

3. Award Plaintiffs' attorney's fees and costs incurred in this action; and

//
//
//
//

4. Grant such additional relief as the court deems just and proper.

                                                               Respectfully Submitted,

DATED:     July 27, 2012                     **WIRTZ LAW APC**

By:   /s/ Richard M. Wirtz
       Richard M. Wirtz
       Wirtz Law APC
       3111 Camino del Rio, North, Ste.310
       San Diego, CA 92108

       Thomas D. Foster
       TD Foster - Intellectual Property Law
       12626 High Bluff Drive, Suite 150
       San Diego, CA 92130

Attorneys for Plaintiffs DAVID ELLIOTT and CHRIS GILLESPIE